C. William Hoilman                                    +
BBO# 639339
M&A Counselors and Fiduciaries LLC
21 Cummings Park, Suite 200
Woburn, MA 01808
Tel: (781)376-9400

Attorney for Plaintiff
Jessica Harrelson

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSICA HARRELSON; | ) Case No.  1:09-cv-11714 |
| Plaintiff, | ) |
| | ) COMPLAINT |
| vs. | ) |
| | ) JURY TRIAL DEMANDED |
| SEUNG HEUN LEE; DAHN YOGA & | ) |
| HEALTH CENTERS, INC.; TAO | ) |
| FELLOWSHIP, DAHN INSTITUTE, INC.; | ) |
| BR CONSULTING; INC.; MAGO EARTH, | ) |
| INC.; VORTEX, INC.; OASIS ARABIANS, | ) |
| LLC and DOES 1 to 100, Inclusive. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JURISDICTIONAL ALLEGATIONS

1.      Jurisdiction is confered on this court by 18 USC §1964, 29 USC §216, 28 USC §1331, and 28 USC §1337, in that this matter presents a question of federal law and in that this matter involves a statute addressing interstate commerce.  Plaintiff is alleging a violation of her rights under Title IX of the Organized Crime Control Act of 1970, as amended, 18 USC §§ 1961, et seq.  Plaintiff is also alleging a violation of her rights under the Fair Labor Standards Act of 1983, 29 USC §§ 201, et seq.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.      Jurisdiction is also conferred on this Court by 28 USC §1332, in that this matter is a civil action between citizens of different states in which the claims in controversy exceed $75,000, exclusive of interest and costs.  All of the Defendants are citizens of Arizona and/or New Jersey.  Plaintiff is a citizen of Massachusetts.  Plaintiff's claims against each Defendant exceed $75,000, exclusive of costs and interest.

3.      Plaintiff Jessica Harrelson is an individual residing in Arlington, Massachusetts.

4.      Defendant Seung Heun Lee (aka "Seuseungnim", "Grand Master Seung Heun Lee" and "Dr. Ilchi Lee") (hereinafter referred to as "Ilchi Lee"), is an individual residing in Arizona.

5.      Defendant Dahn Yoga & Health Centers, Inc. is a corporation incorporated under the laws of Arizona with its principal place of business in Arizona.

6.      Defendant Tao Fellowship is a corporation incorporated under the laws of Arizona with its principal place of business in Arizona.

7.      Defendant Dahn Institute, Inc. is a corporation incorporated under the laws of Arizona with its principal place of business in Arizona.

8.      Defendant BR Consulting, Inc. is a corporation incorporated under the laws of New Jersey with its principal place of business in Arizona.

9.      Defendant Mago Earth, Inc. is a corporation incorporated under the laws of Arizona with its principal place of business in Arizona.

10.      Defendant Vortex, Inc. is a corporation incorporated under the laws of Arizona with its principal place of business in Arizona.

11.     Defendant Oasis Arabians, LLC is a corporation incorporated under the laws of Arizona with its principal place of business in Arizona.

## THE DAHN ORGANIZATION

12.     Plaintiff is the victim of an insidiously effective scheme, conceived and orchestrated by Defendant Ilchi Lee, which uses concealment and misrepresentation to induce Dahn Yoga recruits into unknowingly entering a controlled environment where they are subjected to an intensive program of psychological manipulation, indoctrination and various techniques of coercive thought reform designed to induce them to become Ilchi Lee's disciples.

13.     Once indoctrinated, members are systematically separated from their previous lives and coercively induced to spend all the money they possess or can borrow on Dahn Yoga classes, programs and retreats.   Then they are employed as virtual slaves in Ilchi Lee's enterprise, the "Dahn organization."

14.     The Dahn organization ("Dahn"), which is controlled by Defendant Ilchi Lee, operates under a complex web of corporate names, and is comprised of a myriad of for-profit and not-profit business entities and organizations including, but not limited to, the corporate Defendants, all of which collectively operate and control more than 130 "Dahn Yoga" centers in the United States, including 9 in Massachusetts, as well as more than 300 Dahn Yoga centers in South Korea, 350 in Japan, and approximately 20 in Canada and the United Kingdom. Defendant Ilchi Lee is the founder, leader and controller of the Dahn organization, and the principal of the corporate Defendants.  All of the corporate Defendants are Ilchi Lee's alter egos, subject to his absolute control and dominion.

15.     Defendants recruit new members into the Dahn organization through the use of solicitation by existing members, operation of Dahn Yoga "Body and Brain" clubs on college

campuses, as well as by advertising in fliers posted on college campuses and nearby businesses and street corners.

16.     Defendants represent that Dahn provides yoga exercise and meditation programs at its Dahn Yoga centers, and promises new members improved physical and mental health and personal and spiritual growth.  Defendants represent that Dahn Yoga is medically effective to treat any and all health conditions that potential new members complain of.  Defendants also represent that Dahn promotes world peace and health through the dissemination and globalization of Dahn Yoga practices.  This goal is characterized as the great humanitarian "Vision" of Defendant Ilchi Lee.  However, Defendants represent that Dahn Yoga is not a religious practice and that Dahn is not a religious organization.

17.     Defendants conceal the fact that Dahn is a totalistic, high-demand group with Defendant Ilchi Lee acting as its self-appointed absolute spiritual and temporal leader. Defendants conceal the fact that the Dahn Yoga program is designed and intended by Defendants to recruit and indoctrinate people into the Dahn organization, where they are subjected to a pattern of indoctrination, psychological manipulation, thought reform, coercive persuasion and undue influence by the leadership of Dahn at the behest of Dahn's leader, Defendant Ilchi Lee.

18.     Defendants exercise fraudulent concealment, psychological manipulation, indoctrination, thought reform, coercive persuasion and undue influence over new members to induce them to purchase extended memberships, additional Dahn Yoga programs, workshops and extended training retreats, thereby subjecting themselves to additional indoctrination and psychological manipulation.  Defendants exercise undue influence over indoctrinated members to coercively induce them to dedicate themselves to the practice of Dahn Yoga and the Dahn organization.  Defendants exercise undue influence over indoctrinated members to coercively

induce them to become "disciples" of Defendant Ilchi Lee and devote themselves to achieving his "Vision".

19.     Defendants conceal the fact that they exercise undue influence over indoctrinated members to coercively induce them to take out student and personal loans to purchase extended memberships and additional Dahn Yoga programs, workshops and retreats.  Defendants conceal the fact that they exercise undue influence over indoctrinated members to coercively induce them to "donate" all the money they possess or can borrow to Dahn.  Defendants conceal the fact that they exercise undue influence over indoctrinated members to coercively induce them to work excessive hours assisting in the operation of the Dahn Yoga centers and other Dahn business operations without reasonable or lawful compensation.

20.     Defendants also conceal the fact that Defendant Ilchi Lee is a sexual predator who routinely abuses his position of trust and confidence as the absolute spiritual and temporal leader of Dahn and exercises undue influence to coercively induce young female disciples such as Plaintiff to submit to his predatory sexual advances.

21.     Defendant Dahn Yoga & Health Centers, Inc. is the primary shell corporation utilized by Ilchi Lee to operate Dahn Yoga centers in the United States.  Plaintiff Jessica Harrelson worked at Dahn Yoga centers in Massachusetts operated by Defendant Dahn Yoga & Health Centers, Inc.  Plaintiff Jessica Harrelson paid Defendant Dahn Yoga & Health Centers, Inc. for Dahn Yoga classes and programs at Dahn Yoga centers in Massachusetts.

22.     Defendant Mago Earth, Inc. is an affiliated shell corporation that was also utilized by Ilchi Lee to operate Dahn Yoga centers in the United States.  Plaintiff Jessica Harrelson also worked at Dahn Yoga centers in Massachusetts operated by Defendant Mago Earth, Inc.

Plaintiff Jessica Harrelson also paid Defendant Mago Earth, Inc. for Dahn Yoga classes and programs at Dahn Yoga centers in Massachusetts.

23.     Defendant Tao Fellowship ("Tao") is an affiliated shell non-profit religious corporation that Ilchi Lee uses to operate extended Dahn Yoga training programs in Arizona. Plaintiff Jessica Harrelson paid money to Tao Fellowship to attend extended Dahn Yoga training in Arizona. Ilchi Lee also uses Tao to hold real property he purchases using funds he transfers from the other corporate shell Defendants. In this way, Lee evades paying taxes on the real properties.

24.     Defendant Dahn Institute, Inc. is an affiliated shell non-profit educational corporation that Ilchi Lee also uses to operate extended Dahn Yoga training programs in Arizona. Plaintiff Jessica Harrelson also paid money to Dahn Institute, Inc. to attend extended Dahn Yoga training in Arizona.

25.     Defendant BR Consulting, Inc. ostensibly licenses proprietary intellectual property rights to the other corporate Defendants in exchange for royalty fees. In actuality, BR Consulting, Inc. is a shell corporation utilized by Ilchi Lee to conceal and misrepresent his ownership, management and financial interest in the business activities of the Dahn organization. Ilchi Lee funnels the profits of the Dahn organization to BR in the form of royalty, license and consulting fees, and then utilizes those funds for his personal use. At the beginning of each month, before the generation of any income, each Dahn Yoga center included as a projected expense a charge by BR Consulting in an amount equal to 30% of the center's projected gross income. At the end of each month, each Dahn Yoga center would pay an amount equal to 30% of its gross income to BR Consulting under the guise of royalty, license or consulting fees.

26.     Defendant Oasis Arabians, LLC ("Oasis") ostensibly provides property management services to BR Consulting, but is in reality used to hold real Ilchi Lee's property, including horse ranches, that are purchased with funds transferred from the other corporate shell Defendants.

27.     Defendant Vortex, Inc. ("Vortex") is an affiliated shell corporation that Ilchi Lee uses to sell Dahn Yoga related merchandise to members.  Vortex was involved in Defendants' sale of Dahn Yoga related merchandise to Plaintiff through the use of fraud and undue influence. When Plaintiff purchased Dahn Yoga related merchandise, she sometimes paid the money to Vortex.

## ALTER EGO, AGENCY AND CONSPIRACY ALLEGATIONS

28.     Defendant Ilchi Lee is the founder, leader and controller of Dahn, and the principal of the corporate Defendants.  All of the corporate Defendants are Ilchi Lee's alter egos, subject to his absolute control and dominion.  At all times herein mentioned, there existed a unity of interest and ownership between each of the corporate Defendants and Ilchi Lee such that any separateness between them has ceased and each of the corporate Defendants is the alter ego of Ilchi Lee and each other.  Ilchi Lee disregarded the corporate formalities and failed to maintain arm's length relationships among the corporate Defendants.  Ilchi Lee used the funds, assets and employees of the corporate Defendants for his own purposes.  Ilchi Lee caused the funds, assets and employees of the corporate Defendants to be transferred without adequate consideration. Ilchi Lee completely controlled, dominated, managed and operated each of the corporate Defendants and intermingled the funds, assets and employees of each to suit his convenience. The corporate Defendants share the same officers and directors.

COMPLAINT

29.     The corporate Defendants are mere shells, without capital, assets, stock or stockholders.  At no time after each corporate Defendant became incorporated was any stock authorized to be issued or issued, nor has any permit for issuance of stock been applied for.  The business of each of the Defendant corporations was carried out without the holding of directors' or shareholders' meetings and no records or minutes of any corporate proceedings were maintained.  The corporate Defendants use the same business locations and employ the same employees.  Ilchi Lee utilizes the shells of the corporate Defendants to conceal and misrepresent his involvement in the ownership, management and financial interest in the business activities of the Dahn organization undertaken through the use the shells of the corporate Defendants.

30.     Ilchi Lee operated the Dahn organization as a joint business enterprise and utilized the corporate Defendants as mere shells in order to avoid liability for his misconduct.  Ilchi Lee routinely transferred Dahn members from employment with one corporate Defendant to employment with another corporate Defendant.  Ilchi Lee routinely appointed, transferred and demoted the leadership of the Dahn business enterprise without regard for corporate fiction.  Ilchi Lee exercises absolute control over all of the properties and assets held in the name of the corporate shell Defendants.  Ilchi Lee causes all of the profit of the Dahn business enterprise to be transferred to him or utilized for his personal benefit.

31.     At all times herein mentioned, Ilchi Lee was intimately involved in the day to day operations of the business of the Dahn organization carried out in the name of the Defendant shell corporations.  He reviewed financial reports regarding the operations of the Dahn Yoga centers on a daily, weekly and monthly basis.  He received daily, weekly and monthly reports from Dahn Masters responsible for operating the Dahn Yoga centers.  He issued daily, weekly and monthly directives to the Dahn Masters responsible for operating the Dahn Yoga centers.

All the important decisions in the Dahn organization were either made by Ilchi Lee or with his approval.

32.     Most of corporate officers of each corporate shell Defendants are not even working in that position.  Almost all of them are not working as their title suggests.  The reason why they are given these titles is that most of them have legal status – either working visa or green card.  Second, they have an important role in Dahn organization.  For example, Tao Fellowship CEO Kyung Ryun Kim works at Honor's Haven Resort in upstate New York helping Ilchi Lee's wife run the Dahn affiliated resort.  He does not participate in any business involving Tao Fellowship, which is located in Mago Garden, Sedona, Arizona.  Tao Fellowship President Sun Hee Kim is the regional director in Boston and manages Dahn Yoga centers in Boston areas.  She used to be a regional director in California and did a successful vision achievement there.  She used to work for Ilchi Lee directly at BR Consulting before working at Boston.  She never worked for Tao Fellowship.  Tao Fellowship Secretary Pil Sun Pyun works on the construction team at Honor's Haven Resort.

33.     Adherence to the fiction of the separate existence of the Defendant shell corporations as entities distinct from each other or Defendant Ilchi Lee would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.  It would permit Ilchi Lee to avoid liability for misconduct he conspired to commit and committed through the manipulation of corporate shell Defendants he controlled.

34.     Based upon the foregoing, at all times herein mentioned, each Defendant was the agent of every other Defendant, and in doing the things herein alleged was acting within the course and scope of such agency and with the permission and consent of said co-Defendants.

35.     Based upon the foregoing, at all times herein mentioned the Defendants and their agents knowingly and willingly conspired with each other to do the acts and things hereinafter alleged.  The Defendants and their agents did the acts and things hereinafter alleged pursuant to and in furtherance of the conspiracy.

## DEFENDANTS' RECRUITMENT AND INDOCTRINATION OF PLAINTIFF

36.     In fall of 2003, Plaintiff was 20 years old and in her third year at the University of Massachusetts at Amherst.  At this time, she was introduced to Dahn Yoga by a fellow student who was a member of Dahn, Michael Munson.  Michael Munson told Plaintiff that Dahn provided a yoga exercise and meditation program at these classes, and promised her improved physical and mental health and personal growth.  He told her that Dahn promoted world peace and health through the dissemination and globalization of Dahn Yoga practices.

37.     On November 21, 2003, Michael Munson invited Plaintiff to attend a weekend-long Dahn Yoga workshop in New Hampshire.  This workshop was a retreat for young Dahn members and included roughly 40 young Dahn members.  They were referred to as the Young Earth Human Alliance or "YEHA".  The head trainers at this event were Lucie Vogel, Danielle Gaudette, and Young Sun Park, whom Plaintiff knew at the time by her "spiritual" name of Chun Shim.  At this retreat, they emphasized that Dahn promoted world peace and health through the dissemination and globalization of Dahn Yoga practices.  This goal was characterized as the "Vision" of Ilchi Lee, the founder of Dahn Yoga.  This event was two days of training that focused on finding peace within themselves and their communities.  There were lots of group-building activities, walks through the woods, communal eating, etc.  There was also some typical Dahn Yoga exercise, such as Dahn-Jon patting and Yeon Dahn, which is holding certain stress positions for lengths of time.  The food they ate was all purchased in advance by the organizers

of the event, especially Lucie, Danielle, and Young Sun.  It was all vegetarian.  The amount of time they were given to sleep was short.  Plaintiff slept about six hours per night that she was there.  The training was new and strange to Plaintiff, but everyone there was happy, she was happy, and she was feeling very open-minded.  Through the workshop, Plaintiff felt an immense sense of energy and peace, such as she had never experienced before, and from that moment she began practicing Dahn Yoga intensely.

38.  Upon their return from the retreat in New Hampshire, Michael Munson and Plaintiff began doing morning training together 3 days a week with another student who had gone on the retreat with them.  In addition, Michael Munson began teaching Dahn Yoga classes several days per week in the evenings, which Plaintiff always attended.  The morning trainings took place around 7am for one hour, and the evening classes lasted for about an hour as well.  These trainings and classes were conducted at the suggestion of the Dahn Masters at the Boston Dahn Yoga centers, especially Lucie Vogel and Young Sun Park.  Lucie Vogel also traveled out to Amherst from Boston on Tuesdays, and Plaintiff trained with her for most of the afternoon and evening.  During this period, Lucie Vogel and Young Sun Park emphasized the physical exercises, meditation, stretching, breathing, and purported healing techniques of Dahn Yoga.

39.  Lucie Vogel and Young Sun Park told Plaintiff that Dahn Yoga would heal Plaintiff's chronic pain in her lower right abdomen.  They told her repeatedly that the pain was associated with a liver imbalance due to Plaintiff's anger problems.  They advised her to utilize the Dahn yoga healing techniques involving striking the area, massaging it deeply, and releasing her anger.  They told Plaintiff that as she became more proficient at Dahn Yoga the area would heal through her emotional balance.

40.     At the start of Plaintiff's Dahn yoga practice, Lucie Vogel and Young Sun Park emphasized the promotion of world peace and health through spreading the practice of Dahn Yoga.  Lucie Vogel and Young Sun Park told Plaintiff that Dahn Yoga was not a religion and Dahn was not a religious organization.  They told Plaintiff it was yoga practice just liken any other, only better.  They told Plaintiff that many people of all different faiths practiced Dahn Yoga and that it was the type of training anyone could do.  Later in her training, prior to Master's Training, Danielle Gaudette and Master Hong repeated these same statements.  Later, when Plaintiff applied to become a Dahn Master, she was required to sign a document professing that she would have no other faith other than the belief that Ilchi Lee was an enlightened being and her spiritual master.

41.     During these classes, the reinforcement Plaintiff received from Lucie Vogel and Young Sun Park was primarily positive.  Plaintiff initially felt better with increased physical activity and experienced a sense of belonging and a sense of purpose.  The excitement of a larger philosophy was intoxicating and overwhelming to Plaintiff.  Distinct and strong pressure was placed upon Plaintiff by Lucie Vogel and Young Sun Park to make a greater commitment to Dahn by purchasing and attending additional Dahn Yoga classes, workshops and retreats.

42.     In December of 2003 and January of 2004, Plaintiff began attending Dahn Yoga classes at the Dahn Yoga club at the Massachusetts Institute of Technology and at the Somerville Dahn Center.  Lucie Vogel and Young Sun Park inculcated the desire in Plaintiff to be the perfect Dahn trainee.  Lucie Vogel and Young Sun Park continued to place distinct and strong pressure upon Plaintiff to make a greater commitment to Dahn Yoga and the Dahn organization by purchasing and attending additional classes, programs and retreats.

43.     In late January 2004, Lucie Vogel and Young Sun Park convinced Plaintiff to attend the 1st International YEHA Camp at the Mago Garden training center in Sedona, Arizona, even though it interfered with her first classes of the spring semester at the University of Massachusetts.  The conditions at this retreat included a controlled, isolated environment where all activity was structured and the participants were subjected to isolation from the outside world including friends and family, authoritarian dominion, enforced group activity, intense peer pressure, lack of privacy, extreme and constant activity, excessive exercise and overwork, forced maintenance of stress positions, sleep deprivation, and a modified diet.  The members got up at around 6 a.m. and were in constant training, meditation or motion throughout the day, and went to sleep around 1 a.m.  No outside interests, contacts, or activities were permitted during this retreat.

44.     At this retreat, Master Bup Sung and Master Chun Suk instructed Plaintiff that her past life and the outside world, including her friends and family, were impediments to her personal and spiritual growth.  The training lasted 3 or 4 days and involved intensive personal and group trainings.  Plaintiff cried frequently during the retreat. She cried after every training. A lot of the trainings touched on personal issues that Plaintiff had struggled with over the past few years, and she cried as she tried to release them.  At one point, Plaintiff felt totally empty during the training.  She was crying because she could not feel any emotions at all except fear of that empty feeling.  Young Sun Park instructed Plaintiff that she needed Dahn Yoga to save her from that empty feeling.

45.     At this retreat, the instructors taught Plaintiff that Ilchi Lee was the enlightened leader of Dahn with a great altruistic "Vision" to promote world peace and health through the dissemination and globalization of Dahn Yoga.  Plaintiff was instructed in how to greet

Defendant Ilchi Lee.  This greeting included standing silently at attention when he arrived and made his way to his chair, and how she was supposed to show her appreciation for his presence by bowing, clapping, cheering, jumping up and down, etc.  There was also a ritual greeting that she was taught to say upon his command.

46.    On the last day of the training, as people packed and got ready to leave, Lucie Vogel approached Plaintiff to talk about the training.  Lucie Vogel suggested that in order to continue the lessons she had learned at the YEHA camp, Plaintiff really should take a training put on by the Dahn Centers, a training called "Shim Sung."  Lucie Vogel told Plaintiff that as long as she agreed to help Michael Munson with his classes at the University of Massachusetts that spring, the Dahn Centers would waive the Shim Sung training fee for her.  Plaintiff agreed to attend the Shim Sung training.

47.    Over the following months, Plaintiff's Dahn Yoga training became more rigorous. During Spring of 2004, she began helping teach Dahn Yoga classes at the Dahn club at the University of Massachusetts in Amherst three times a week, as well as training with other Dahn members every day.  During this period, Plaintiff became a "true believer" and saw Dahn Yoga as "the answer" to all of her problems and commenced a total immersion into Dahn activities.

48.    In early February of 2004, at Lucie Vogel's suggestion, Plaintiff attended a weekend Shim Sung workshop retreat in Waltham, Massachusetts.  The conditions at the Shim Sung retreat were intense and included a controlled, isolated environment where all activity was structured and the participants were subjected to enforced group activity, intense peer pressure, authoritarian dominion, lack of privacy, extreme and constant activity, excessive exercise and overwork, forced maintenance of stress positions.  The participants were all instructed that Ilchi Lee was the enlightened leader of Dahn with a great altruistic "Vision" to promote world peace

and health through the dissemination and globalization of Dahn Yoga.  The participants were instructed that their past lives and the outside world, including their friends and family, were impediments to their spiritual growth.  The participants were led to believe that their true purpose in life was to be a "Dahn Healer" or a "Dahn Master" in order to contribute something meaningful to humanity as apart of Ilchi Lee's "Vision."

49.     The retreat took place from 9 a.m. to 9 p.m. on both Saturday and Sunday.  There was one short break for lunch and another short break in the afternoon.  There was no break for dinner.  The climax of Shim Sung training was a period of about an hour where the room was darkened and loud tribal music was played and all members were instructed to close their eyes and do "Dahn Jon patting" while yelling out things such as "What do I want?" and "Who am I?" and at times simply moaning and screaming.  These exercises were painful, and Plaintiff felt her knees lock up and a recurring pain in her abdomen.  At one point during this exercise one of the trainers who Plaintiff believes to be Danielle Gaudette came up to her and pounded on Plaintiff's back with her fists while screaming and moaning loudly in her ear.  Plaintiff cried frequently during the training.

50.     At the end of the Shim Sung training session, the participants were instructed to write down how they wanted to act on their "new found purpose", including what further Dahn trainings they wanted to take.  Plaintiff's perception of the world had changed as a result of what she had been subjected to at the Dahn Yoga classes and programs, including the Shim Sung retreat.  Like most new Dahn members, following the Shim Sung retreat, Plaintiff believed that going to Dahn Healer School would be the best way to facilitate her desire to contribute something meaningful to humanity as a part of Ilchi Lee's "Vision."  Plaintiff wrote that within a year she hoped to attend Dahn Healer School in Sedona, Arizona, and become a Dahn Healer.

51.     Following the Shim Sung retreat, Lucie Vogel told Plaintiff that in order to continue her personal and spiritual growth within the framework of Ilchi Lee's "Vision" she needed to become an instructor of Dahn Yoga classes and needed to attend a training retreat in Sedona, Arizona, called Healer School.  Lucie Vogel told Plaintiff that Dahn provided training in how to use Dahn Yoga techniques to heal others at Dahn Healer School.  She told Plaintiff that it would be detrimental to her spiritual growth to put off Healer School.

52.     At first, Plaintiff resisted going to Healer School due to the immense cost of the training.  Lucie Vogel pressured Plaintiff to take out a student loan to cover the cost of the training.  Lucie Vogel assured Plaintiff that taking out the loan was the greatest investment she could make in her soul.  Plaintiff hesitatingly signed the contract for Healer School, still apprehensive but really trusting Lucie Vogel and the opinions of the other Dahn Masters in Boston.  During this period, Plaintiff began to lie to her family about the cost of her training and the level of her commitment to Dahn.

53.     Lucie Vogel bought Plaintiff's plane ticket that day so that she couldn't go back on her decision.  Lucie Vogel fully acknowledged that this was the reason she bought Plaintiff the ticket that day, but it was in a joking, not intimidating way.  Plaintiff eventually paid her back for the ticket with money from a future student loan.  Plaintiff took out a large loan to cover the total cost of Healer School, which was broken up into two sessions costing $5,000 each. In addition to the $10,000 training fee there were accommodation fees of $65/day while in Sedona (close to 14 days total), two round-trip plane tickets to Arizona for the two sessions, shuttle fees between Phoenix and Sedona, textbook fees, and compulsory membership to a Dahn website at $10/month which needed to be paid for a year up front.

54.     In mid-March 2004, Plaintiff attended a weeklong Healer School retreat in Arizona.  The training in Sedona was a step up from the YEHA camp.  The days were longer and the training more intense.  It included education on anatomy and energy systems, hands-on training, and a lot of personal training.  The trainings were conducted by Masters Bup Sung and Chung Suk with the addition of Jin, a female master.

55.     At the end of the training, the participants did 1000 bows.  Bow training is instrumental to Dahn, and closely resembles Buddhist bowing.  It is painful and physically exhausting.  Before going to graduation, Plaintiff did approximately 700 bows to prepare for the training.  After doing so many bows, Plaintiff's right foot hurt severely.  She told her trainer, Bup Sung Han, about the pain in her right foot.  He recommended that Plaintiff do more bows and thereby release the negative energy in that area.  Overall, during her entire tenure with Dahn, Plaintiff was repeatedly told that any pains or ailments within her body were caused by her negative energy that could only be released through further Dahn Yoga training.  All of the Dahn Masters in Boston, Arizona and Korea taught told Plaintiff this and encouraged her to do further Dahn Yoga practice for any medical issues she had instead of seeing doctors.  This included Plaintiff's complaints of pain in her lower right abdomen, foot injuries, recurring severe headaches, fatigue, and indigestion.

56.     The conditions at this week-long retreat were the most intense yet and included isolation from the outside world, including friends and family, enforced group activity, peer pressure, authoritarian pressure, lack of privacy, extreme and constant activity, excessive exercise and overwork, and forced maintenance of stress positions.  It was reiterated that Ilchi Lee was the enlightened leader of Dahn with a great altruistic "Vision" to promote world peace and health through the dissemination and globalization of Dahn Yoga.  It was reiterated that the

participants' past lives and the outside world, including their friends and family, were impediments to their spiritual growth. No outside interests, contacts, or activities were permitted during this retreat.

57.     Upon returning to Massachusetts from the Healer School training, Plaintiff continued attending Dahn Yoga classes at the Dahn Yoga club at the University of Massachusetts, Monday through Friday. She attended classes at Dahn Yoga centers near Boston nearly every weekend.

58.     In May of 2004, Plaintiff was induced to attend another YEHA retreat in Sedona. This retreat took place a week before her exams and she did very poorly on her exams as a result. Plaintiff did not tell her family about this retreat because of its proximity to her exams.

59.     Following this YEHA retreat in Sedona, Plaintiff was asked to assist in organizing a Dahn conference at Boston and a Dahn presentation at Massachusetts Institute of Technology.   Plaintiff prepared for the conference and presentation from June through September of 2004. During this period, in addition to working 9 a.m. to 5 p.m. to organize the conference, Plaintiff trained from 7 a.m. to 9 a.m. at the Somerville Dahn Center, taught Dahn Yoga classes at Brandeis University from 6 p.m. to 8 p.m. and trained at the Newton Dahn center from around 9 p.m. to 11 p.m., after which she helped clean and close the Newton Dahn Center. Plaintiff was induced to miss several of her first classes of the fall semester in order to work on Dahn activities during this period.

60.     During this period, Lucie Vogel explained the ostensible flow of money in Dahn. She told Plaintiff that nearly all of the money collected in Dahn went into funding Dahn programs and opening new centers in order to heal the earth. Lucie Vogel told Plaintiff that Ilchi Lee lived a very simple and austere life and was not a rich man. Lucie Vogel and Young Sun

Park frequently told Plaintiff that one day all Dahn programs would be free. However, after Plaintiff became a Dahn Master, Lucie Vogel and Young Sun Park was repeatedly told her that Dahn was in danger of failing due to lack of funds and that the Dahn Yoga centers where she was working were in danger of being closed due to lack of funds. This threat was used to induce Plaintiff and other Dahn Masters to work excessive hours for unreasonably low compensation or no compensation at all.

61. Several days after the presentation, Plaintiff met privately with Ilchi Lee and he asked her to go to Korea. Plaintiff was ushered into the room alone. She sat, feeling a range of emotions from nervous to elated to honored. Ilchi Lee hugged Plaintiff and held her hands. He asked her some questions in simple English about her Dahn training. One of the questions he asked Plaintiff was, "Do you want to go to Korea?" As a result of what Plaintiff had been subjected to at the Dahn Yoga classes and retreats, she was unable to say no and immediately agreed to Ilchi Lee's request.

62. Plaintiff went back to the University of Massachusetts and began her classes. By this point, Michael Munson and Plaintiff were living together in a house in Amherst. They trained together every morning, taught Dahn classes at the University of Massachusetts and at Hampshire College in the evenings, and traveled to Boston every weekend to train and staff workshops. By this point, they had both declared their intention to become Dahn Masters, so their lives were consumed by their training and thoughts of how to bring in as many new people to Dahn as they could, which is the primary goal of any Dahn Master.

63. One of the head trainers in Boston, known as Master Hong, spoke to Plaintiff immediately after her meeting with Ilchi Lee and frequently thereafter. Master Hong told Plaintiff that she must go to Korea. Even though Plaintiff had said yes to Ilchi Lee, she didn't

want to go.  She didn't think that she could.  She had too many responsibilities, such as school and family, and she knew her family would never approve of her going.  However, to not go to Korea when Ilchi Lee wanted her there, in the words of Plaintiff's trainers, meant that her soul could not grow and that she would actually be hurting her family by not growing herself.  The material hurt, they assured Plaintiff, would be balanced and even made better by her decision to grow herself.

64.    By this point in time, Plaintiff's mother had become increasingly concerned with the amount of time she was spending in Dahn Yoga training and away from the Amherst area. Plaintiff also began to lie to her mother about the cost of her training, leading her mother to believe that she had received a lot of training for free or for significantly reduced fees, due to her being a student.  Plaintiff started taking out more student loans to support not only her training, but her living expenses, as she was unable to hold a regular job due to her commitment to Dahn and the Dahn Yoga classes she was trying to teach at the University of Massachusetts and Hampshire College.  Plaintiff took out loans to pay rent, utilities, to buy food and essentials, and to pay for the large amount of gas she used traveling back and forth between Boston and Amherst.  Plaintiff also spent a fair amount of money on tools used for Dahn training, such as books, massage tools, a necklace purported to have healing powers, and a light and sound brain stimulation device.  Plaintiff was always assured that she needed these tools in order to get over whatever current problem she was facing.  Often, when Plaintiff couldn't immediately afford these items, Dahn Masters in Boston would pay for them for her, creating another person to whom she owed money.

65.    Before that spring, Plaintiff had never before considered taking out student loans for any purpose other than education, but she was pressured to do so by the Dahn Masters who

were training her.  Whenever Plaintiff hesitated, there was always the strong insinuation that if she didn't buy this program or that item, then all of her training had been for nothing, she wouldn't be able to progress, and her soul would suffer.  This was devastating information from people Plaintiff trusted utterly, so she naively sent herself further and further into debt.  Often in Dahn Yoga training, Plaintiff was reminded that every decision she made was 100% her choice.  Those choices, however, very often came with the stipulation that there was only one clear choice which would lead to her spiritual growth and inner peace.  To make any other decision would be impossible if she wanted to continue on her path towards spiritual growth and world peace.

66.     In summer of 2004, Plaintiff returned to Sedona, Arizona, for a week to complete her Dahn Healer School training.  The Dahn Masters in Boston, including Lucie Vogel and Master Hong, pressured her to take out additional student loans to cover the cost of this training.

67.     Following Healer School, Plaintiff commenced attending, promoting and teaching Dahn Yoga classes over forty hours a week without compensation.  As a result, she had to use money from student loans and personal loans to pay for rent, utilities, gas, food and car insurance.  She also used these funds to print flyers and posters promoting Dahn Yoga centers, as well as to pay for Dahn Yoga training, and tools for Dahn training, such as books, massage tools, healing necklaces and a light and sound brain stimulation device.  Plaintiff's life was consumed by her training and desire to bring in as many new members to Dahn as she could, in accordance with Ilchi Lee's "Vision."

68.     During this period, the Dahn Masters in Boston used both positive and negative reinforcement to pressure Plaintiff to make a complete commitment to Dahn Yoga practices and the Dahn organization, especially Ilchi Lee and his "Vision."  Masters Hong, Vogel, and Young

Sun Park pressured Plaintiff to make a greater commitment of time and money, including requiring her to borrow money and live off of her credit cards.  Masters Hong, Vogel, and Young Sun Park pressured Plaintiff to recruit new members into the Dahn organization and assist in the inducement of existing members to purchase additional classes, programs and retreats.  All of the Dahn Masters in Boston pressured Plaintiff to provide free labor and work excessive hours assisting in the operation of Dahn centers without compensation.  Masters Hong and Young Sun Park punished dissent or the questioning of the Dahn organization's practices with sleep deprivation, excessive painful exercise, extended maintenance of stress positions, and longer work hours.  All of the Dahn Masters in Boston instructed Plaintiff to venerate Ilchi Lee as an enlightened leader responsible for her spiritual growth through her participation in his "Vision." They instructed Plaintiff to "wash away" all previously held thoughts, beliefs and attachments and replace them with a devotion to Dahn and Ilchi Lee and his "Vision."  The old thoughts, beliefs and attachments Plaintiff was instructed to wash away included relationships with her friends and family and any personal interests outside of Dahn.  The Dahn Masters in Boston instructed Plaintiff that participation in Ilchi Lee's "Vision" was the most important thing in the world, both for the future of all of humanity and for her spiritual growth.  If Plaintiff resisted, they threatened her with alienation.  Plaintiff was so eager to be a part of a group of people that appreciated and loved her that it was impossible for her to do anything that would alienate them from her.

69.     During this period, Masters Hong and Young Sun Park pressured Plaintiff to spend less and less time with her family and friends.  Whenever Plaintiff had a family or personal commitment, they would pressure her to participate in an "important" Dahn event.  All of the Dahn Masters in Boston, especially Masters Hong, Young Sun Park, Vogel and Danielle

Gaudette constantly told Plaintiff that her spiritual growth and her participation in Ilchi Lee's "Vision" were the most important thing in the world.  They all told Plaintiff that if she really wanted to heal herself and help others, she should not focus on her personal life, and that if her family and friends wanted what was best for her, they would support her increasing participation in Dahn.

70.     During a weekend in fall of 2004, Plaintiff was asked to be staff for a Shim Sung training for more junior members.  Staffing the event required practice late into the night on the weekend and the Friday before the training, as well as two full days of work during the course of the training.  During a weekend in fall of 2004, Plaintiff attended two workshops that were required for members who were intending to become Dahn Masters.

71.     Masters Hong and Vogel pressured Plaintiff to take out additional student loans to pay for Dahn trainings and products.  When Plaintiff resisted, Masters Hong, Vogel, and Young Sun Park told her that she needed to purchase these training programs and products or her spiritual growth and advancement within the Dahn organization would suffer.  They threatened her with alienation from the group.  As a result of what Plaintiff had been subjected to during Dahn Yoga classes, programs and retreats, she was unable to resist their pressure, especially that of Masters Hong and Vogel, and she took out additional student loans to cover the cost of the training.

72.     From December 11 through 23, 2004, Plaintiff was induced to attend a Dahn training retreat in Sedona, Arizona, called "Master's Training".  The conditions at Master's Training were even more intensive than that at Healer School, and included isolation from the outside world including friends and family, enforced group activity, peer pressure, authoritarian pressure, lack of privacy, extreme and constant activity, excessive exercise and overwork, forced

maintenance of stress positions, sleep deprivation, activities designed to humiliate the trainees and put them through emotional extremes, and a low calorie diet. There were times that the trainees missed meals (such as during the bow training and other long training sessions), and there were times that they were only given a certain portion of rice with kimchi to eat, a portion that had to be shared amongst all the trainees. About halfway through the training the trainees were told to have a partner for eating, and of the two people only one person could get a plate of food, thus cutting the amount they ate in half. The trainees slept, on average, only 3-5 hours per night.

73.     The conditions at Master's Training included the following: Doing bow training at 5am, outside, barefoot, with no coats, in the winter in the desert. Bow training was a typical Dahn training method involving enduring repetitive stress positioning and exertion to the point of exhaustion. Running outside with no shoes on over gravel and around cactus. Competitive events where the losers were punished by sticking their heads in the toilet, drinking toilet water, licking and kissing the other trainees' feet on the floor of the men's bathroom, and holding themselves in the pushup posture for 20 to 30 minutes. Doing pushups and not being allowed to collapse. Plaintiff was compelled to do over 150 pushups. Doing 3000 bows. This training takes between 8 and 9 hours, with no breaks, and is incredibly painful to the knees and lower back. Crawling across the wooden floor of the main hall at the training center, using only their forearms and elbows, dragging their legs behind us, and having to reach the finish line at the same time, but within 20 seconds. Plaintiff and several other members had the skin chaffed off their forearms and large bruises on their elbows. Being subjected to ostracism and physical and emotional punishment for failing to perform as desired and for expressing dissent or independence. Repeated immersion in an unheated outdoor pool during winter in the desert.

During the training, the trainees were instructed to have a partner for eating, and that the two people had to share one plate of food.

74.     During Master's Training the trainees were required to participate in "spiritual surgery" where all trainees revealed their personal issues they felt were holding them back from their spiritual growth.  The result of everyone's sharing was generally a period of time where they were to scream, cry, bang their fists on the floor, etc., in order to "release" this issue.  This forced confessional ritual humiliated and embarrassed Plaintiff and fostered her dependency on the group for validation.  Plaintiff was required to promise not to engage in sexual activity for 3 years.  During this retreat, Plaintiff was compelled to yell and scream at a male friend, tell him he was horrible, slap him in the face, and hit him.  This behavior was contrary to Plaintiff's character and temperament prior to her involvement in Dahn.

75.     During Master's Training the trainees were required to participate in an interview with high-level Dahn Masters, talking about their devotion to Ilchi Lee and their plans as a Dahn Master.  The trainees were required to acknowledge that Ilchi Lee was their spiritual leader responsible for their continued spiritual growth.  Plaintiff was required to sign an agreement not to have any religion other than belief in Dahn and Ilchi Lee.  Plaintiff was required to repeat a statement that she would die for Ilchi Lee and his "Vision" and acknowledge the possibility she might die during her training.

76.     As a part of the training, Plaintiff was required to accept Ilchi Lee as her spiritual guide and assert that she would have no other faith that would conflict with her belief that he was, as many Dahn Masters would assert, on the spiritual level of Jesus, the Buddha, or Mohammed.   Following this Master's Training retreat, Plaintiff believed Ilchi Lee had transformed her life by "sending" her Dahn.  She believed it.  She felt it all.  She viewed herself

as she was before Dahn and saw a scared, sad, miserable small person who was going nowhere. She viewed herself as she felt then and saw a powerful person, joyous, with a true purpose. Plaintiff really felt deeply in her heart that Ilchi Lee was the reason for the transformation. Plaintiff credited him with "sending" Dahn to her in order to pluck her out of the hole that "She had created for herself."  Plaintiff blamed herself for everything negative that had happened in her life and credited Ilchi Lee with everything positive in her life.

77.    Following Master's Training, Plaintiff was subjected to increasing pressure to go to Korea to continue her Dahn training.  In November of 2004, Masters Hong and Young Sun Park pressured Plaintiff to drop out of college in order to focus on her Dahn training.  From January 3 through 8, 2005, Plaintiff attended "Earthstar Training" in Sedona, Arizona.  The "Earthstars" are young Dahn members from Korea and the United States who travel to the other countries to promote Dahn.  Usually members that have completed Master's Training are not chosen to be Earthstars.  Plaintiff was chosen to be an Earthstar because Ilchi Lee wanted her in Korea.

78.    On January 8, 2005, Plaintiff departed for Korea.  For the first two weeks that she was in Korea, she worked for BR English, a Dahn corporate affiliate in Korea.  However, Ilchi Lee wanted her to have experience at a Dahn center in Korea, so she was moved to a Dahn center in Seoul.  Plaintiff spent many hours a day handing out promotional flyers and posters. She attended trainings for young Dahn members in Korea.  She cleaned and cooked.  Because Plaintiff was in a foreign country where she did not speak the language, the isolation was intense.  Plaintiff was totally dependent upon Dahn.  She attended a weeklong training for pre-masters in Korea.  This closely resembled the Master's Training she had attended in Sedona, Arizona.

79.    After this training, in mid-February 2005, Plaintiff was moved to another Dahn center in Seoul.  She woke up at 5 a.m. and went to sleep after midnight seven days a week. Plaintiff's duties included handing out promotional flyers and putting up posters for hours a day, cleaning, cooking, and leading warm-up exercises for Dahn classes.  Plaintiff was not paid for this activity and had to use up the $3,000.00 remaining from the student loans to support herself and cover transportation to trainings and required equipment for trainings.  During this period, Plaintiff slept on the floor of the Dahn center with only a pillow and a blanket.

80.    During the period April through June of 2005, Plaintiff was transferred to work for BR English in Seoul.  She taught classes and wrote books.  She worked a minimum of 12 hours a day, often working up to 20 hours a day.  The work week was six or seven days.  During this period, Plaintiff also attended trainings and led some other Earthstars in training in the mornings and evenings and on the weekends.  Plaintiff's supervisor at BR English was a Dahn Master with more seniority than her, who was often involved in her training.  Plaintiff received approximately $800.00 a month for her work, which was just enough to cover her room and board and costs of additional training.  Plaintiff had no legal clearance to work in South Korea. She was on a 3 month tourist visa that had expired.  She had no health insurance while she worked and was paid under the table.

81.    Plaintiff met personally with Ilchi Lee several times while she was in Korea during this period.  On one such meeting, Ilchi Lee instructed her to begin a six day training consisting of bowing, a typical Dahn training method involving enduring repetitive stress and exertion.  At the end of the training, Ilchi Lee gave Plaintiff her special "soul name" of "Dahn Soon," which means "simple" in Korean.  He gave me her surname of Lee and told her that she was his daughter.  Several weeks later he gave her a gold necklace with crystals.

82.     In mid June 2005, Plaintiff was sent back to Boston.  Upon her return to Boston, Plaintiff commenced work assisting in the operation of Dahn centers in the Boston area.  Her work at the centers included handing out promotional flyers and putting up posters, shopping, cooking, cleaning, teaching Dahn classes, consulting new members, giving healing sessions, and organizing center events.  Typically, Plaintiff left her house around 5 a.m. and returned between 1 a.m. and 3 a.m.  During this period, she frequently slept only two or three hours a night.  She only received about $1,400.00 a month in compensation during this period.  She worked at the Brookline center for about 3 weeks but was moved to the Newton center when it became apparent that she was "struggling" at Brookline.  Struggling meant that she was not bringing in enough new Dahn members or income, and was taken as a sign of a problem in her energy or in her devotion. The Newton center was where the more seasoned Dahn members worked (especially Master Hong), so Plaintiff was moved there to be under their influence.

83.     At this time, Masters Hong, Vogel and Young Sun Park told Plaintiff that in order to continue her spiritual growth she needed to purchase a lifetime membership to Dahn for $4,500.00 and purchase 10 healing sessions for $4,000.00.  By this time, Plaintiff had used up her student loan proceeds and had no money left.  As a result, Plaintiff resisted this decision. Masters Hong, Vogel and Young Sun Park told Plaintiff to go do bow training in another room until she reached the correct decision.  Plaintiff believed that resistance was futile, so she simply went into the other room and cried, because she believed she did not have a choice in the matter. Then she fell asleep.  Masters Hong, Vogel and Young Sun Park came and woke Plaintiff up and asked her what her decision was.  As a result of what Plaintiff had been subjected to at the Dahn classes and retreats, she was unable to resist their pressure and borrowed additional money to cover the $8,500.00 cost of the lifetime membership and 10 healing sessions.

84.     In August of 2005, Young Sun Park notified Plaintiff that Ilchi Lee wanted her to return to Korea.  Plaintiff complied and returned to Korea and resumed her work at BR English in Seoul.  She taught classes and wrote books.  She worked a minimum of 12 hours a day, often working up to 20 hours a day.  The work week was six or seven days.  During this period, Plaintiff was paid approximately $800.00 a month.  Commencing around October of 2005, Plaintiff was paid approximately $1,700.00 a month, which was just enough to cover her room and board and costs of additional training.  During this period, Plaintiff also attended trainings and led some other Earthstars in training in the mornings and evenings and on the weekends.

85.     During the period March through December 2006, Plaintiff also took intensive Korean language classes, which allowed her to obtain a student's visa.  During this period, she left her apartment at 8 a.m. in order to get to class by 9 a.m.  Class was from 9 a.m. to 1 p.m.  Plaintiff returned and started work by 2 p.m.  She usually worked until midnight, and then did 1 or 2 hours of homework.  Classes were five days a week.  Plaintiff worked full time at BR English on the weekends.  During this period in Korea, Plaintiff was on a student visa that gave her no legal clearance to work.  She had no health insurance while she worked and was paid under the table.

86.     During this period in Korea, Plaintiff was instructed to be a model or spokesperson for Dahn in Korea, as her appearance (tall, fair-skinned, blond-haired and blue-eyed) was striking to many Koreans.  Plaintiff's photograph was on posters and brochures in most Dahn centers in Korea and even in some centers in Japan.  Plaintiff acted in a commercial for BR English that was displayed on subway stations in Seoul.  She was in Korean newspapers and on Korean television.  She received no compensation for these services.

87.     During this period, Ilchi Lee would sometimes call Plaintiff to his apartment in Seoul for meetings where she cooked for him and ate with him.  Whenever Plaintiff visited Ilchi Lee he would give her gifts of cash or gift certificates to Korean department stores.  On a number of occasions, Plaintiff spent the night at Ilchi Lee's apartment in Seoul in the room where other Dahn Masters sometimes slept.  Ilchi Lee would also call Plaintiff to attend Dahn functions with him.  On other occasions, Ilchi Lee would call her to go to the sauna with him, where he would hold her hands and tell her to massage his feet.  Ilchi Lee asked Plaintiff to email him every day in Korean about the work she had done in her training.

88.     In the summer of 2006, Ilchi Lee invited Plaintiff to accompany him on a weekend trip to Jeju Island, a vacation island in Korea.  Following the trip to Jeju Island, Ilchi Lee asked Plaintiff into the bedroom in his apartment in Seoul.  He had Plaintiff stand while he danced with her while humming and pressed his genitals against hers.  Plaintiff felt extremely uncomfortable with this and attempted to hold her hips away from his.  However, as a result of what Plaintiff had been subjected to at the Dahn classes, programs and retreats, she felt guilty and foolish and believed that something must be wrong with her for feeling uncomfortable with anything Ilchi Lee did.  The belief that Ilchi Lee was never wrong was a constant refrain and pattern within the Dahn organization.

89.     At 6 a.m. on October 22, 2006, Plaintiff received a call from Ilchi Lee's caretaker and was told that Ilchi Lee wanted to see her and that she should go to his apartment after the Shim Sung training she was staffing was completed.  Plaintiff arrived at his apartment at around 9 p.m. that evening.  She was greeted by Ilchi Lee's caretaker, who instructed her to take a shower.  Ilchi Lee arrived around midnight.

90.     Ilchi Lee sat down with Plaintiff to watch television.  He held and stroked her hand.  When the television program was over he called her into his bedroom.  He instructed her to relax.  He gestured for her to join him on the bed.  He told her to take of her suit jacket so she would be more comfortable.  She felt uncomfortable with this, but again felt guilty and foolish and believed that something must be wrong with her for feeling uncomfortable with anything Ilchi Lee did.

91.     Ilchi Lee had Plaintiff lay down next to him on his bed.  He began to stroke her shoulder and back under her shirt.  Then, Ilchi Lee leaned over and kissed her three times on her mouth.  He stroked her back under her shirt.  He had them both get under the sheets.  He took her hand and placed it on his genitals, where she could feel that he was erect.  He held her hand there and made her stroke him.  Plaintiff felt extremely uncomfortable with this, but again felt guilty and foolish and believed that something must be wrong with her for feeling uncomfortable with anything Ilchi Lee did.  She told herself over and over that Ilchi Lee would never do anything to hurt her and must have some reasons for what he was doing.

92.     Ilchi Lee pulled his track pants below his buttocks and placed Plaintiff's hand on his penis, moving her hand in order to make her stroke him.  He pushed her head under the covers and held her head down until she stimulated him orally.  Ilchi Lee then rolled her onto her back, took off her pants and underwear, lay on top of her and penetrated her.  Plaintiff felt extremely uncomfortable with this, and told herself over and over that Ilchi Lee would never do anything to hurt her and must have some reasons for what he was doing.  After he ejaculated, he rolled off her.  He held her for a little while.  At one point he ran his fingers through her hair and said "I like gold hair" in heavily accented English.

93.     As a result of the treatment and conditions Plaintiff had been subjected to by Dahn, as set forth above, she was unable to resist Ilchi Lee's emotional and psychological dominance.  Plaintiff did not willingly and freely consent to Ilchi Lee's sexual advances.

94.     As a result of Ilchi Lee's sexual abuse, Plaintiff experienced severe emotional distress, anxiety, panic attacks and depression.  She became convinced that Dahn members were going to try and kill her to silence her.  Nightmares, night terrors and waking up paralyzed became common for her.  She became severely depressed and slept and cried for days.  She did not eat and lost weight.  She experienced stomach aches and headaches.  In the week after the sexual abuse, Plaintiff left her apartment one day, went to the office supply store, and bought a razor.  She went home and used the razor to cut her left shoulder, upper arm and forearm.  She was so emotionally distressed that cutting herself distracted her for a little while.  As a result, she now has scars on her shoulder, upper arm, and forearm.

95.     The morning following the sexual abuse by Ilchi Lee, Plaintiff told Hojin Jeong, her Dahn Master and supervisor at BR English, that she had to resign from being a Dahn Master because Ilchi Lee had sexually abused her.  Hojin Jeong and MiJung Shin, a very high-level and powerful Dahn Master in Korea, made an ongoing concerted effort to convince Plaintiff that what happened was right and natural.  They instructed Plaintiff that there was a spiritual aspect to Ilchi Lee's sexuality that she did not understand.  They instructed her that Ilchi Lee was only trying to help her and that she should be ashamed for daring to question his integrity.  They told her that she should apologize to Ilchi Lee.  They instructed her that it was a great honor to receive such attention from Ilchi Lee.  Hojin Jeong told her about hearing an account one time of Ilchi Lee fondling another Dahn member's breasts and telling her she had an energy blockage there.  Hojin Jeong told Plaintiff that the other female Dahn members had felt jealous of the

breast fondling, and that some Dahn Masters would probably be jealous of Plaintiff. MiJung Shin accused Plaintiff of being a traitor to Dahn and Ilchi Lee. These conversations took place in Plaintiff's apartment, in MiJung Shin's office in Seoul, in saunas, and mountain retreats. Dahn isolated Plaintiff from her friends and attempted to prevent her from telling anyone about what had happened.

96.    In December of 2006, Plaintiff was "permitted" to resign as a Dahn Master. As a "condition" of her resignation, she was required to write a letter apologizing to Ilchi Lee. Plaintiff hoped to leave Korea in December of 2006 in order to go home and be with her family and return to college. However, she was over $50,000.00 in debt and had almost no money in the bank. Accordingly, she was compelled to continue working for BR English until she could save enough money to move back to Massachusetts. It was not until October of 2008 that Plaintiff was able to return to Massachusetts.

97.    Although Plaintiff was aware that Ilchi Lee's sexual abuse of her was wrongful almost immediately after it occurred, for quite a while she was still under the influence of the Dahn organization, which she still believed was an enlightened group. Plaintiff still believed that the time and money she had invested in Dahn had helped improve her life and helped save the world. Plaintiff was not free of the deceptions and undue influence that had been employed against her and was incapable of understanding that Dahn had recruited her through the use of deception, concealment and psychological manipulation and had then subjected her to an ongoing program of intense psychological manipulation, coercive persuasion and thought reform in order to exercise undue influence over her. Nor was she capable of appreciating that she had suffered psychological injury and severe emotional distress as a result of Dahn's wrongful conduct separate and apart form the sexual abuse by Ilchi Lee.

98.     Following Plaintiff's physical exit from Dahn, she began to slowly recover from the effects of Dahn's psychological manipulation, coercive persuasion, thought reform and undue influence.  It was not until approximately September of 2008 that Plaintiff had recovered sufficiently from the effects of Dahn's psychological manipulation, coercive persuasion, thought reform and undue influence to be able to appreciate that Dahn had deceived her and taken unfair advantage of her and exploited her for their financial gain.  It was only then that she was able to appreciate that she had suffered psychological injury and severe emotional distress as a result Dahn's wrongful conduct.

### FIRST CAUSE OF ACTION
### (Fraud in the Inducement)
### (All Defendants)

99.     Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

100.    As set forth above, during her initial Dahn Yoga classes, programs and retreats, Defendants' agents operating the Dahn Yoga centers represented to Plaintiff that Dahn provided yoga exercise and meditation programs at these Dahn Yoga centers, and promised Plaintiff improved physical and mental health and personal and spiritual growth.  Defendants' agents operating the Dahn Yoga centers represented that Dahn Yoga was medically effective to treat any and all health conditions and physical ailments that Plaintiff complained of.  Defendants' agents operating the Dahn Yoga centers also represented that Dahn promoted world peace and health through the dissemination and globalization of Dahn Yoga practices.  This goal was characterized as the humanitarian "Vision" of Defendant Ilchi Lee.  However, Defendants agents represented that Dahn Yoga was not a religious practice and that Dahn was not a religious

organization. Defendants' agents represented that all of the money members paid for Dahn Yoga classes, programs and retreats went to cover Dahn Yoga center expenses and Dahn's humanitarian efforts to promote world peace and health through the dissemination and globalization of Dahn Yoga practices.

101. During Plaintiff's initial Dahn Yoga classes, programs and retreats, Defendants' agents operating the Dahn Yoga centers and the Dahn Yoga programs and retreats intentionally concealed the fact that Dahn is a totalistic, high-demand group with Defendant Ilchi Lee acting as its self-appointed absolute spiritual and temporal leader. Defendants' agents concealed the fact that Dahn Yoga as practiced within the Dahn organization was designed and intended by Defendants to recruit and indoctrinate young people into Dahn, where they are subjected to a program of indoctrination, psychological manipulation, thought reform, coercive persuasion and undue influence by the leadership of Dahn at the behest of Dahn's leader, Defendant Ilchi Lee.

102. During Plaintiff's initial Dahn Yoga classes, programs and retreats, Defendants' agents operating the Dahn Yoga centers and the Dahn Yoga programs and retreats intentionally concealed the following material facts concerning the Dahn organization from Plaintiff:

    a.    Defendant Ilchi Lee is the self-appointed absolute spiritual and temporal leader of the Dahn organization.

    b.    In order to advance in the practice of Dahn Yoga, and advance within the Dahn organization, members had to acknowledge that Defendant Ilchi Lee was an enlightened spiritual leader devoted to a great humanitarian "Vision."

    c.    In order to advance in the practice of Dahn Yoga, and advance within the Dahn organization, members had to become a "disciple" of Defendant Ilchi Lee and

devote themselves to achieving his "Vision" of promoting and spreading the practice of Dahn Yoga and the growth of the Dahn organization.

d.     In order to advance in the practice of Dahn Yoga, and advance within the Dahn organization, members were required to acknowledge that absolute devotion to Defendant Ilchi Lee and his "Vision" was the sole source of personal and spiritual growth for everyone and was the only way to save the world from impending disaster.

e.     Absolute devotion to Defendant Ilchi Lee and his "Vision" required that members "wash away" their previously held attachments, thoughts and beliefs and replace them with an absolute devotion to Defendant Ilchi Lee and his "Vision."

f.     Under the guise of Dahn Yoga training, Defendants would subject members to intense and prolonged group programs utilizing a variety of techniques of psychological manipulation, coercive persuasion, thought reform and undue influence designed to induce members to "wash away" their previously held attachments, thoughts and beliefs and replace them with an absolute devotion to Defendant Ilchi Lee and his Vision.

g.     Defendants would subject members to a highly structured, controlled and organized group environment where they would be continuously subjected to a variety of techniques of psychological manipulation, coercive persuasion, thought reform and undue influence designed to reinforce behavior and thought consistent with an absolute devotion to Defendant Ilchi Lee and his "Vision."

h.     Absolute devotion to Defendant Ilchi Lee and his "Vision" required that members dedicate all of their time and effort to serving the Dahn organization.

i.   Absolute devotion to Defendant Ilchi Lee and his "Vision" required that members dedicate all of their available cash and credit to the Dahn organization.

j.   Absolute devotion to Defendant Ilchi Lee and his "Vision" required that members disconnect from their previous life, including friends and family and any personal interests outside of Dahn.

k.   Absolute devotion to Defendant Ilchi Lee and his "Vision" required that members live communally with other members.

103.   During Plaintiff's initial Dahn Yoga classes, programs and retreats, Defendants' agents operating the Dahn Yoga centers and the Dahn Yoga programs and retreats concealed the fact that Ilchi Lee is a sexual predator who routinely abuses his position of trust and confidence as the absolute spiritual and temporal leader of Dahn and exercises undue influence to coercively induce young female disciples such as Plaintiff Jessica Harrelson to submit to his predatory sexual advances.

104.   During Plaintiff's initial Dahn Yoga classes, programs and retreats, Defendants' agents operating the Dahn Yoga centers and the Dahn Yoga programs and retreats concealed the fact that Defendant Ilchi Lee squeezes all of the profit from the operation of the Dahn organization and uses it to purchase luxurious ranches, houses, cars, horses and boats, as well as to fund his extravagant lifestyle of travel, fine dining, gambling, hunting, deep sea fishing and golfing.

105.   Many of the above referenced factual representations by Defendants were false. Defendants knew that Dahn Yoga is not medically effective to treat the health conditions that Plaintiff complained of.   Defendants knew that Dahn Yoga as practiced within the Dahn organization was damaging to a member's physical and mental health and personal and spiritual

growth.  Defendants knew that the true mission of the Dahn organization was not to spread world peace and health, but to increase its membership and increase the income of Ilchi Lee. Defendants knew that all of the profit from the operation of Dahn yoga centers went to fund Ilchi Lee's extravagant lifestyle and purchases.  Defendants' knew that Dahn Yoga as practiced within the Dahn organization was a religion, with Ilchi Lee acting as the self appointed absolute spiritual and temporal leader.

106.  Based upon the circumstances of their relationship and the transaction, Defendants had a duty to disclose the information set forth above to Plaintiff.  In light of Defendants' representations concerning the purported physical, mental and spiritual benefits of Dahn Yoga and the Dahn organizations' purportedly humanitarian goals, the undisclosed facts regarding the true nature of the Dahn organization and Defendants' real intentions with respect to new recruits such as Plaintiff constituted matters that Defendants knew had to be disclosed in order to prevent their partial or ambiguous statements of the facts from being misleading. Likewise, the undisclosed facts also constitute facts basic to the transaction that Plaintiff would reasonably expect to be disclosed.  Furthermore, given that Defendants were offering Plaintiff guidance concerning her spiritual growth, there existed a relation of trust and confidence between Plaintiff and Defendants that required disclosure of the information.  There was no informed consent by Plaintiff prior to her subjecting herself to Defendants' program of indoctrination, psychological manipulation, thought reform, coercive persuasion and undue influence by the leadership of Dahn at the behest of Dahn's leader, Defendant Ilchi Lee.

107.  Plaintiff is not aware of all the actions Defendants took to actively conceal the above referenced information.  The facts concerning Defendants active concealment is particularly within Defendants' exclusive possession.  Plaintiff is informed and believes that

high level Dahn Masters in Ilchi Lee's inner circle conceal the information concerning Ilchi Lee's use of the profit from the operations of the Dahn organization and Ilchi Lee's sexual abuse of young female Dahn members from all Dahn Masters of a lower level.  Plaintiff is informed and believes that high level Dahn Masters in Ilchi Lee's inner circle instructed their agents operating the Dahn Yoga centers and the Dahn Yoga programs and retreats to conceal the remainder of the above referenced information from all new recruits such as Plaintiff.

108.   All of the Dahn Masters were trained to represent that Dahn provides yoga exercise and meditation programs at the Dahn Yoga centers. They were trained to promise new members improved physical and mental health and personal and spiritual growth.  They were instructed to represent that Dahn Yoga is effective to treat any and all health conditions and personal problems that potential new members complain of.  They were trained to represent that Dahn promotes world peace, health and enlightenment through the spread of Dahn Yoga practices.  They were trained to explain that this goal is the great humanitarian "Vision" of Ilchi Lee.  However, they were trained to represent that Dahn Yoga is not a religious practice and that Dahn is not a religious organization.

109.   During members' initial participation in Dahn Yoga classes, programs and retreats, the Dahn Masters were trained to emphasize the physical exercises, meditation, stretching, breathing, and healing techniques of Dahn Yoga to induce members to make a greater commitment to Dahn Yoga and the Dahn organization.  During members' initial participation in Dahn Yoga classes, programs and retreats, the Dahn Masters were trained to provide a loving, caring and supportive community in order to induce members to make a greater commitment to Dahn Yoga and the Dahn organization.  They were trained to invite new members to attend several weekend Dahn Yoga retreats and evening activities.  They were trained to organize and

conduct frequent group building activities designed to cultivate close personal relationships between the new members and their Dahn Masters and other Dahn members in order to induce members to make a greater commitment to Dahn Yoga and the Dahn organization.

110.    During new members' initial participation in Dahn Yoga classes, programs and retreats, Dahn Masters were trained to exert distinct and strong pressure upon the new members to make a greater commitment to Dahn Yoga and the Dahn organization by purchasing and attending additional classes, programs and retreats.  They were also were trained to convince new members to attend several additional weekend workshops, including the primary three weekend workshops called "Initial Awakening", "More than Body" and "Shim Sung".

111.    Dahn Masters were trained to use these weekend workshops to further indoctrinate new members into Dahn.  They were trained to create a controlled, isolated environment where all activity was structured and the new members were subjected to prolonged group activity, peer pressure and authoritarian dominion in order to elicit their personal information regarding their fears, personal problems and life issues.  They were trained to then use that information to induce new members to question their previously held attachments, thoughts and beliefs.  They were trained to convince members their previously held attachments, thoughts and beliefs were impediments to their physical and mental health and personal and spiritual growth.  They were taught to represent that Dahn Yoga was a tool to help them "let go" of what was holding them back so they could achieve physical and mental health and personal and spiritual growth.  They were trained to convince members that their true purpose in life was to be a "Dahn Healer" or a "Dahn Master" in order to contribute something meaningful to humanity as a part of Ilchi Lee's enlightened "Vision."  They were trained to use environmental conditions and exercises designed to induce trance states and euphoria that would make

members more susceptible to their coercive persuasion.  They were trained to pressure members to commit to purchase and attend extended Dahn Yoga training retreats in Arizona immediately following the Shim Sung workshop, while they were most susceptible.  These extended training retreats were called various names, including "Healer School", "Dahn Mu Do School", "Tao Holistic Healing," and "Chun Myung," etc.  They were trained to convince new members to borrow the money to pay for these extended Dahn Yoga training retreats, if necessary.

112.   After the members completed Master's Training, Dahn Masters were trained to strongly encourage them to make more of a connection with and devotion to Ilchi Lee and his Vision goals, which included responsibility to their Dahn Yoga center, to being there as much as they were needed, to always thinking of the center's needs before their own, to making family not their first priority.  Dahn Masters were trained to instruct new members that even during their off time they should be focused on the Dahn Yoga center and sacrifice their personal life for Vision and Ilchi Lee.

113.   Defendants intended to deceive Plaintiff regarding the true nature of the Dahn organization and its real goals and motivations with respect to the new recruits such as herself, as set forth above, in order to induce Plaintiff to participate in Dahn Yoga classes, programs and retreats, where she would be subjected to a pattern of psychological manipulation, undue influence and dominance by the leadership of Dahn at the behest of Dahn's leader, Ilchi Lee. During new members' initial participation in Dahn Yoga classes, programs and retreats, Dahn Masters were trained to conceal the above referenced information about Dahn Yoga and the Dahn organization because it would scare new members away if it was revealed before they were ready.  Dahn Masters were trained to reveal the above referenced information about Dahn Yoga and the Dahn organization to American members slowly and gradually; only after the American

member had attended a sufficient number of classes, programs and retreats and were thereby prepared by us to accept this information without being scared away.

114.     In reasonable reliance on Defendants' misrepresentations and concealment of the above material facts, Plaintiff began attending Dahn Yoga classes, programs and retreats.  Had she known the true facts about the Dahn organization, as set forth above, Plaintiff would not have participated in any Dahn Yoga classes, programs or retreats.  Had Plaintiff known she would be subjected to a pattern of psychological manipulation, indoctrination, thought reform, coercive persuasion and undue influence by the leadership of Dahn at the behest of Dahn's leader, Defendant Ilchi Lee, as set forth above, Plaintiff would not have participated in any Dahn Yoga classes, programs or retreats.

115.     Plaintiff was harmed as a result of her reliance on the deceptions and concealment of Defendants, in that Plaintiff participated in Dahn Yoga classes, programs and retreats and thereby unknowingly subjected herself to ongoing psychological manipulation, indoctrination, thought reform, coercive persuasion and undue influence, and was thereby coercively induced to spend all the money she possessed or could borrow on Dahn Yoga classes, programs, retreats and merchandise, and to work excessive hours assisting in the operation of Defendants' Dahn Yoga centers and other Dahn business operations without reasonable or lawful compensation.

116.     Plaintiff suffered severe emotional distress and psychological trauma as a result of Defendants' deceptions and concealment and her resultant exposure to psychological manipulation, indoctrination, thought reform, coercive persuasion, undue influence and dominance by the leadership of Dahn at the behest of Dahn's leader, Ilchi Lee, as set forth above.

**SECOND CAUSE OF ACTION**
**(Undue Influence)**
**(All Defendants)**

117.   Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

118.   As a result of Defendants' psychological manipulation, indoctrination, coercive persuasion and thought reform, as set forth above, Plaintiff over time suffered from a severe weakness of mind characterized by a severe impairment of autonomy and of the ability to think independently or disagree with Defendants.   As intended by Defendants, Plaintiff instead reposed absolute trust and confidence in the leadership of the Dahn organization, especially Defendant Ilchi Lee.   Because of Plaintiff's severe weakness of mind, Defendants were able to dominate and control Plaintiff.   As a result, a confidential and fiduciary relationship existed between Plaintiff and Defendants.

119.   Defendants abused the absolute trust and confidence reposed in them by Plaintiff, and utilized it to take an unfair advantage of Plaintiff's weakness of mind by coercively inducing Plaintiff to spend all the money she possessed or could borrow on Dahn Yoga classes, programs and retreats, and to work excessive hours assisting in the operation Defendants' Dahn Yoga centers and other Dahn business operations without reasonable or lawful compensation.

120.   The apparent consent of Plaintiff in performing the above referenced activities was not real, mutual or free in that it was obtained through Defendants' undue influence, as set forth above, and Plaintiff would not have given her consent or performed the above referenced activities but for Defendants' undue influence.

121.   As a result of Defendants' undue influence, as set forth above, Plaintiff has suffered damages in that she has spent all the money she possessed or could borrow on Dahn

Yoga classes, programs and retreats.  As a result, Plaintiff has gone into debt by taking out student and personal loans to purchase Dahn Yoga classes, programs and retreats.  Plaintiff has suffered damages in that she worked excessive hours assisting in the operation of Defendants' Dahn Yoga centers and other Dahn business operations for unreasonably low and unlawful compensation, or no compensation at all.  As a result, Plaintiff was forced to use student and personal loans to support herself.

122.    Defendants have been unjustly enriched as a result of their undue influence of Plaintiff in that they received the funds that Plaintiff paid to attend Dahn Yoga classes, programs and retreats as a result of Defendants' undue influence.  Defendants have been unjustly enriched as a result of their undue influence of Plaintiff in that they received the benefits of Plaintiff working excessive hours assisting in the operation of Defendants' Dahn Yoga centers and other Dahn business operations without having to pay Plaintiff reasonable or lawful compensation.

123.    Under recognized principles of law and equity, Defendants should be liable to compensate Plaintiff for financial harm she suffered as a result of Defendants' undue influence over her.  Under recognized principles of law and equity, Defendants should be required to disgorge all of the fees paid to them by Plaintiff in order to participate in Dahn Yoga classes, programs and retreats.  Under recognized principles of law and equity, Defendants should be required to pay Plaintiff reasonable compensation for all the work Plaintiff performed assisting in the operation of Defendants' Dahn Yoga centers and other Dahn business operations.

### THIRD CAUSE OF ACTION
**(Unfair and Deceptive Business Practices)**
**(All Defendants)**

124.    Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

125.    Defendants' intentional misrepresentations and concealment of the true nature of the Dahn organization and Defendants' intentions with respect to new recruits such as Plaintiff, as set forth above, constitutes unfair and deceptive business acts or practices prohibited by §2 of Chapter 93A, of the Massachusetts General Laws.

126.    Defendants use of psychological manipulation, indoctrination, thought reform, coercive persuasion and undue influence in order to coercively induce Plaintiff to spend all the money she possessed or could borrow on Dahn Yoga classes, programs, retreats and merchandise constitutes unfair and deceptive business acts or practices prohibited by §2 of Chapter 93A, of the Massachusetts General Laws.

127.    As a result of Defendants' unfair and deceptive business practices, as set forth above, Plaintiff has suffered damages in that she has spent all the money she possessed or could borrow on Dahn Yoga classes, programs and retreats.  As a result, Plaintiff has gone into debt by taking out student and personal loans to purchase Dahn Yoga classes, programs and retreats.

128.    Plaintiff suffered severe emotional distress and psychological trauma as a result of Defendants' unfair and deceptive business practices, as set forth above.

129.    On April 8, 2009, Plaintiff sent a demand letter to Defendants in accordance with the requirements of §9 of Chapter 93A of the Massachusetts General Laws, setting forth in detail the unfair and deceptive practices complained of and the injuries sustained by Plaintiff as a result.  Defendants have failed and refused to settle Plaintiff's claims against them.

### FOURTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**

COMPLAINT

**(All Defendants)**

130.   Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

131.   Defendants' intentional conduct, including the concealment of the true nature of the Dahn organization and their intentions with respect to new recruits such as Plaintiff, and their psychological manipulation, indoctrination, thought reform, coercive persuasion and undue influence of Plaintiff, as set forth above, constitutes extreme and outrageous conduct that was not privileged.

132.   When Defendants intentionally concealed the true nature of the Dahn organization and their intentions with respect to new recruits such as Plaintiff from her, and when Defendants subjected Plaintiff to an intense program of psychological manipulation, indoctrination, thought reform, coercive persuasion and undue influence, as set forth above, Defendants recklessly disregarded the substantially certainty that Plaintiff would suffer severe emotional distress and psychological trauma as a result.

133.   Plaintiff suffered severe emotional distress and psychological trauma as a result of Defendants' extreme and outrageous conduct, as set forth above.

**FIFTH CAUSE OF ACTION**
**(Failure to Pay Wages and Overtime, Federal Wage and Hour Laws)**
**(All Defendants)**

134.   Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

135.   Based upon the facts set forth above, Plaintiff was an employee of Defendants, and each of them, during the periods in which she assisted in the operation of Dahn Yoga centers

and other Dahn business operations. Based upon their unified operation and common control of the Dahn organization, Defendants were Plaintiff's employers within the definition of the Fair Labor Standards Act of 1983 ("FLSA"), 29 USC §203. At all times herein set forth, Defendants were engaged in commerce within the meaning of the FLSA in that they regularly sold Dahn Yoga programs and retreats that would take place in Arizona to residents of other states. Defendants also operated Dahn Yoga centers in multiple states and forwarded the income to their headquarters in Arizona.

136.     At all times herein mentioned, Plaintiff was involved in the Defendants' business of interstate commerce, in that she sold Dahn Yoga programs and retreats to members that would take place in Arizona and the income from the Dahn Yoga centers and other Dahn business operations where Plaintiff worked was forwarded to Defendants' headquarters in Arizona.

137.     During the period of time that she assisted in the operation of Dahn Yoga centers and other Dahn business operations, Plaintiff regularly worked 80 to 100 hours per work week. Plaintiff did not keep an accurate log of the hours she worked due to Defendants' undue influence over her, as set forth above. Defendants coercively induced Plaintiff to underreport the hours she worked. Defendants failed to keep accurate records of the hours worked by Plaintiff.

138.     During the period of time that Plaintiff assisted in the operation of Dahn Yoga centers and related businesses, Defendants failed to pay Plaintiff a minimum wage in violation of the FLSA, 29 USC §206.

139.     During the period of time that Plaintiff assisted in the operation of Dahn Yoga centers, Defendants failed to pay Plaintiff overtime compensation for hours she worked in excess of 40 hours per work week in violation of FLSA, 29 USC §207.

140.    Plaintiff brings this action to recover from Defendants unpaid wages and unpaid overtime compensation and additional equal amounts as liquidated damages pursuant to the FLSA, 29 U.S.C.A. §216(b).

### SIXTH CAUSE OF ACTION
#### (Civil RICO Violation)
#### (All Defendants)

141.    Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

142.    Defendants and the Dahn organization are an enterprise engaged in and the activities of which affect interstate or foreign commerce.  Defendants and the Dahn organization regularly sold Dahn Yoga programs and retreats that would take place in Arizona to residents of other states.  Defendants and the Dahn organization also operated Dahn Yoga centers in multiple states and forwarded the income to their headquarters in Arizona.  Defendants and the Dahn organization also operated health clubs, hotels and guided tours of their properties that attracted citizens of many states and foreign nations.

143.    Defendants, as persons within the meaning of 18 USC §1961(3), received income derived, directly or indirectly, from a pattern of racketeering activity which was used to acquire an interest in said enterprise in violation of 18 USC §1962(a).

144.    Defendants, as persons within the meaning of 18 USC §1961(3), acquired and/or maintained, directly or indirectly, an interest in/control of said enterprise in violation of 18 USC §1962(b).

145.    Defendants, as persons within the meaning of 18 USC §1961(3), and as persons employed by/associated with said enterprise, conducted and participated, directly and indirectly,

in the conduct of the affairs of said enterprise through a pattern of racketeering activity in violation of 18 USC §1962(c).

146.   The predicate acts which constitute this pattern of racketeering activity include the following:

    a.     Conspiring to commit and committing multiple acts of mail and wire fraud in order to induce Plaintiff and others like her to purchase Dahn Yoga classes, programs and retreats in violation of 18 U.S.C. §§ 1341 and 1343.

    b.     Conspiring to hold and holding the Plaintiff and other Americans like her working illegally in Defendants' operations in Korea in peonage under threat of criminal charges and deportation in violation of 18 U.S.C. §1581.

147.   These above referenced acts of racketeering, occurring within ten years of one another, constitute a pattern of racketeering activity within the meaning of 18 USC 1961(5).

148.   Plaintiff was injured by reason of Defendants' violation of 18 USC §1962, in that, as a direct and proximate result of Defendants' complained of acts, Plaintiff was fraudulently induced to spend all the money she possessed or could borrow on Dahn Yoga classes, programs, retreats and merchandise, and coercively induced to work excessive hours assisting in the operation of Defendants' Dahn Yoga centers and other Dahn business operations without reasonable or lawful compensation.

149.   By reason of Defendants' violation of 18 USC §1962, Plaintiff is entitled, pursuant to 18 USC §1964(c), to threefold the damages sustained, with interest, and reasonable attorneys fees.

**SEVENTH CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress/Sexual Abuse)**

**(Defendant Ilchi Lee)**

150.    Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

151.    Defendant Ilchi Lee's exercise of undue influence to sexually abuse Plaintiff, as set forth above, constitutes extreme and outrageous conduct that was not privileged.

152.    When Defendant Ilchi Lee exercised undue influence to sexually abuse Plaintiff, as set forth above, he recklessly disregarded the substantially certainty that Plaintiff would suffer severe emotional distress and psychological trauma as a result.

153.    Plaintiff suffered severe emotional distress and psychological trauma as a result of Defendant Ilchi Lee's extreme and outrageous conduct, as set forth above.

**EIGHTH CAUSE OF ACTION**
**(Negligent Infliction of Emotional Distress/Sexual Abuse)**
**(Defendant Ilchi Lee)**

154.    Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

155.    Defendant Ilchi Lee's exercise of undue influence to sexually abuse Plaintiff, as set forth above, constitutes negligence.

156.    When Defendant Ilchi Lee exercised undue influence to sexually abuse Plaintiff, as set forth above, he recklessly disregarded the substantially certainty that Plaintiff would suffer severe emotional distress and psychological trauma as a result.

157.    Plaintiff suffered severe emotional distress, psychological trauma and physical harm manifested by objective symptomatology as a result of Ilchi Lee's sexual abuse, as set forth above.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DELAYED ACCRUAL AND/OR EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS DUE TO UNDUE INFLUENCE

158.     Plaintiff hereby incorporates by reference and re-alleges all of the allegations contained in the preceding paragraphs of this Complaint.

159.     As a result of Defendants' psychological manipulation, indoctrination, coercive persuasion, thought reform and undue influence of Plaintiff, as set forth above, Plaintiff suffered from a severe weakness of mind characterized by a severe impairment of autonomy and of the ability to think independently or disagree with Defendants.  Plaintiff instead reposed absolute trust and confidence in Defendants.  Because of her severe weakness of mind, Defendants were able to dominate and control Plaintiff.  As a result, a confidential and fiduciary relationship existed between Plaintiff and Defendants.

160.     As a result of Defendants' psychological manipulation and indoctrination of Plaintiff, and her resultant weakness of mind, as set forth above, she did not become cognizant of Defendants' concealment of the true nature of the Dahn organization and their intentions with respect to new recruits such as herself until sometime after she had recovered sufficiently from the effects of Defendants' psychological manipulation, indoctrination, coercive persuasion, thought reform and undue influence.

161.     As a result of Defendants' psychological manipulation and indoctrination of Plaintiff, and her resultant weakness of mind, as set forth above, Plaintiff did not become cognizant of Defendants' psychological manipulation, indoctrination and undue influence of her until sometime after she had recovered sufficiently from the effects of Defendants' psychological manipulation, indoctrination, coercive persuasion, thought reform and undue influence.

162.   As a result of Defendants' psychological manipulation and indoctrination of Plaintiff, and her resultant weakness of mind, as set forth above, Plaintiff was unable to appreciate the wrongful nature of Defendants' conduct complained of herein until sometime after she had recovered sufficiently from the effects of Defendants' psychological manipulation, indoctrination, coercive persuasion, thought reform and undue influence.

163.   As a result, Plaintiffs' claims asserted herein did not accrue, and the statute of limitations did not begin to run until sometime after she had recovered sufficiently from the effects of Defendants' undue influence.  As a result of the foregoing, the statute of limitations on all claims and causes of action herein alleged were tolled until sometime after Plaintiff had recovered sufficiently from the effects of Defendants' psychological manipulation, indoctrination, coercive persuasion, thought reform and undue influence.

164.   Plaintiff did not recover sufficiently from the effects of Dahn's psychological manipulation, coercive persuasion, thought reform and undue influence to be able to appreciate that she had suffered psychological injury and severe emotional distress as a result Dahn's wrongful conduct until approximately September of 2008 and probably later.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff pray judgment against Defendants as follows:

FIRST CAUSE OF ACTION
(Fraud in the Inducement)
(All Defendants)

1.   For economic damages caused by Defendants' fraud in an amount according to proof;

2.   For damages for severe emotional distress and psychological trauma proximately caused by Defendants' fraud in an amount according to proof;

3.   For punitive damages in an amount sufficient to punish Defendants and to deter others from engaging in similar misconduct; and

4.   For costs of suit incurred herein.

SECOND CAUSE OF ACTION
(Undue Influence)
(All Defendants)

1.   For a full and complete accounting of any and all of Defendants' transactions with and money received from Plaintiff;

2.   For judgment against and restitution by Defendants for all of the money they received from Plaintiff, with interest;

3.   For the reasonable value of the work performed for Defendants by Plaintiff as a result of Defendants' undue influence, in an amount according to proof;

4.   For judgment against Defendants for the financial harm suffered by Plaintiff as a result of Defendants' undue influence;

5.   For punitive damages in an amount sufficient to punish Defendants and to deter others from engaging in similar misconduct; and

6.   For costs of suit incurred herein.

THIRD CAUSE OF ACTION
(Unfair Business Practices)
(All Defendants)

1.      For damages caused by Defendants' deceptive and unfair business practices in an amount according to proof;

2.      For civil penalties based upon Defendants' willful and intentional use of deceptive and unfair business practices pursuant to §9 of Chapter 93A of the Massachusetts General Laws, in an amount according to proof;

3.      For damages for severe emotional distress and psychological trauma in an amount according to proof;

4.      For punitive damages in an amount sufficient to punish Defendants and to deter others from engaging in similar misconduct;

5.      For reasonable attorney's fees pursuant to §9 of Chapter 93A of the Massachusetts General Laws, in an amount according to proof; and

6.      For costs of suit incurred herein.

FOURTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
(All Defendants)

1.      For damages for severe emotional distress and psychological trauma in an amount according to proof;

2.      For punitive damages in an amount sufficient to punish Defendants and to deter others from engaging in similar misconduct; and

3.      For costs of suit incurred herein.

FIFTH CAUSE OF ACTION
(Failure to Pay Wages and Overtime, Federal Wage and Hour Laws)
(All Defendants)

COMPLAINT
54

1.     For unpaid wages and civil penalties for Defendants' failure to pay minimum fair wage pursuant to the FLSA, 29 U.S.C. A. §216(b), in an amount according to proof;

2.     For unpaid wages and civil penalties for Defendants' failure to pay overtime compensation pursuant to the FLSA, 29 U.S.C. A. §216(b), in an amount according to proof;

3.     For reasonable attorneys fees pursuant to the FLSA, 29 U.S.C. A. §216(b), in an amount according to proof; and

4.     For costs of suit incurred herein.

## SIXTH CAUSE OF ACTION
### (Civil RICO Violation)
### (All Defendants)

1.     For threefold the economic damages actually sustained as a result of Defendants' violation of 18 USC §1962, plus interest, pursuant to 18 USC §1964(c);

2.     For reasonable attorneys fees pursuant to 18 USC §1964(c), in an amount according to proof; and

3.     For costs of suit incurred herein.

## SEVENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress/Sexual Abuse)
### (Defendant Ilchi Lee)

1.     For damages for severe emotional distress and psychological trauma in an amount according to proof;

2.     For punitive damages in an amount sufficient to punish Defendant and to deter others from engaging in similar misconduct; and

3.     For costs of suit incurred herein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EIGHTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress/Sexual Abuse)
(Defendant Ilchi Lee)

1.     For damages for severe emotional distress and psychological trauma in an amount according to proof; and

2.     For costs of suit incurred herein.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all claims asserted against all Defendants.

DATED:  October 14, 2009          M&A Counselors and Fiduciaries LLC


By:   /s/ C. William Hoilman
       C. William Hoilman
       Attorney for Plaintiff
       Jessica Harrelson

COMPLAINT

56

1

CERTIFICATE OF SERVICE

2

In accordance with Local Rule 5.2(b), I, C. William Hoilman, hereby certify that this

3

document filed through the ECF system on October 14, 2009 will be sent electronically to the

4

registered participants as identified on the Notice of Electronic Filing.

5

6

By:    /s/ C. William Hoilman
       C. William Hoilman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT